UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 06-114 (JDB) |
| v. | : | |
| | : | |
| DELONTA REEVES, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' MOTION FOR GUIDELINE'S CREDIT
AND MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves the Court, pursuant to § 3E1.1(a) & (b) of the Sentencing Guidelines, to adjust the defendant's offense level down three levels reflecting the defendant's acceptance of responsibility for this offense. The United States also submits this memorandum in aid of sentencing.

I.      BACKGROUND

On August 24, 2006, defendant pled guilty to one count of Unlawful Possession with Intent to Distribute 5 Grams or More of Cocaine Base, in violation of 21 U.S. Code Sections 841 (a)(1) and (b)(1)(A)(iii). At that time the defendant signed a "Statement of offense" and admitted to following:

Had this matter proceeded to trial, the Government was prepared to prove beyond a reasonable doubt that on March 28, 2006, at approximately 6:42 p.m., members of the Narcotics Special Investigation Division of the Metropolitan Police Department ("MPD") were conducting an undercover narcotics "buy-bust" operation in the 2500 block of Pennsylvania Avenue,

1

Southeast, in this District. An undercover MPD officer approached co-defendant David Leary and told co-defendant Leary that he wanted to purchase some marijuana. Co-defendant Leary responded that he had to "make sure his man had it," and then co-defendant Leary walked over to a silver-colored Jeep Cherokee, in which the defendant, Delonta Reeves, was sitting in the driver's seat.

Co-defendant Leary got into the passenger side of the Jeep, and a short time later, exited the Jeep and walked back over to the undercover officer. Co-defendant Leary then told the undercover officer that "his man had it," and the undercover officer gave co-defendant Leary $40.00 in pre-recorded MPD funds. Co-defendant Leary walked back to the Jeep, got inside, and a short time later, returned to the undercover officer, and handed the undercover officer two clear zip lock bags containing a green, weed-like substance. Thereafter, the undercover officer left the location, and MPD officers broadcast a look-out description for both co-defendant Leary and defendant Reeves, who had remained in the driver's seat of the Jeep during the entire transaction.

Thereafter, MPD officers stopped co-defendant Leary and defendant Reeves on the scene. The MPD officers searched co-defendant Leary and recovered $6.00 in U.S. currency, $5.00 of which was pre-recorded MPD funds. The MPD officers also searched defendant Reeves and recovered $165.00 in U.S. currency, of which $35.00 was pre-recorded MPD funds, one zip lock of a green, weed-like substance, a clear plastic bag containing a loose, green, weed-like substance, 17 zip locks of green, weed-like substance, one pill bottle containing two pills, and 26 zip locks, each containing a white, rock-like substance.

The MPD officers searched the Jeep Cherokee and recovered one zip lock containing a green, weed-like substance, a Pringles can containing 15 zip locks of green, weed-like substance,

numerous empty zip locks, a large, white rock-like substance, a pill bottle containing 114 zip locks, each of which contained a white, rock-like substance, 116 zip locks, each containing a white, rock-like substance, multiple razors, rubber gloves, and a scale.  The MPD officers also recovered a loaded Ruger, nine millimeter, semi-automatic gun from the center console of the Jeep.

The green, weed-like substance inside of the two zip locks that co-defendant Leary sold to the under cover officer, and all of the green, weed-like substances recovered during the search of defendant Reeves and the Jeep Cherokee were later submitted to the Drug Enforcement Agency's laboratory where chemical analysis determined that each green, weed-like substance is marijuana, with a combined net weight of 34.2 grams.

The two pills recovered from defendant Reeves was submitted to the Drug Enforcement Agency's laboratory where chemical analysis determined that the pills are MDMA, also known as  ecstasy, with a net weight of .55 grams.

Each of the white, rock-like substances recovered from defendant Reeves and from the Jeep Cherokee were submitted to the Drug Enforcement Agency's laboratory where chemical analysis determined that each white, rock-like substance is cocaine base, with a combined net weight of  27.9 grams.

Additional Relevant Conduct

The Government was also prepared to prove beyond a reasonable doubt that on May 18, 2007, at approximately 7:48 p.m., members of MPD's Sixth District Focus Mission Unit were conducting an observation post operation in the 2500 block of Pennsylvania Avenue, Southeast, in this District.  The MPD officers entered a store located at 2529 Pennsylvania Avenue,

Southeast, where they stopped Bryan Heard, who matched the description of a person whom police had just observed engaged in an apparent narcotics transaction outside of the location. Bryan Heard was standing next to defendant Reeves, and both men were standing behind a store counter. The MPD officers saw defendant Reeves toss a clear, plastic bag containing a white, rock-like substance to the floor. An MPD officer searched the floor where defendant Reeves was standing and recovered the plastic bag containing the white, rock-like substance, two scales, and a large zip lock containing a green, weed-like substance.

The MPD officers approached Keith Howard, who was sitting in front of the store counter, and one MPD officer asked Keith Howard to open his hands. Keith Howard then handed the MPD officer two small zip locks containing a green, weed-like substance, and the MPD officer recovered one additional zip lock containing a green, weed-like substance from Keith Howard's jacket pocket. Keith Howard, Bryan Heard, and defendant Reeves were arrested on the scene.

The white, rock-like substance that defendant Reeves tossed to the ground, and the green, weed-like substance that was recovered from the floor where defendant Reeves was standing were both submitted to the Drug Enforcement Agency's laboratory where chemical analysis determined that the white, rock-like substance is cocaine base, with a net weight of 2.6 grams, and the green, weed-like substance is marijuana, with a net weight of 16.7 grams.

## II.     SENTENCING CALCULATION

### A.     Statutory Minimums and Maximums

The charge carries a mandatory minimum sentence of five years imprisonment, a maximum sentence of 40 years imprisonment, a fine of up to $2,000,000.00, a special assessment of $100.00,

and at least four years of supervised release.

      B.      <u>Sentencing Guidelines Calculation</u>

The Guidelines calculation utilized in the Presentence Investigation Report ("PSR") calculates the defendant's total offense level at 32.  <u>See</u> PSR ¶ 33.  (This calculation contemplates a three-level decrease to the defendant's base offense level pursuant to Section 3E1.1 of the Guidelines).  The PSR calculates the defendant's criminal history as Category I.  <u>See</u> PSR ¶ 36.  Therefore, the PSR calculates the Guideline range for the defendant at 121 to 151 months.  <u>See</u> PSR ¶ 75.

**III.**    <u>**GOVERNMENT'S RECOMMENDATIONS**</u>

      A.      <u>Acceptance of Responsibility</u>

The government agrees that the defendant's base offense level should be decreased by three points pursuant to Section 3E1.1 of the Sentencing Guidelines.  He entered a guilty plea, thereby admitting the conduct comprising the offense, and he has cooperated in the pre-sentence investigation.  Accordingly, the government is moving the Court to grant a three-level decrease in the offense level pursuant to § 3E1.1 of the Sentencing Guidelines.[1]

---

[1] Pursuant to the plea agreement, the United States has moved the Court to decrease defendant's offense level three points notwithstanding the fact that defendant has obstructed justice by failing to appear at arraignment and remaining a fugitive for eleven months.  The presentence report writer increased defendant's offense level 2 points for the obstruction, PSR ¶ 29, and did not decrease defendant's offense level for acceptance of responsibility by virtue of his obstruction, PSR ¶ 32.  Although in most cases an upward adjustment for obstruction of justice and a downward adjustment for acceptance of responsibility are inconsistent, <u>see</u> U.S.S.G. § 3E1.1, comment (n.4), <u>see also</u> <u>United States v. Dozier</u>, 162 F.3d 120, 125 (D.C. Cir. 1998), <u>United States v. Gaviria</u>, 116 F.3d 1498, 1521 (D.C. Cir. 1997), defendant's case is arguably one of those cases where the two are consistent because defendant's obstruction came prior to his accepting responsibility and is not otherwise inconsistent with his acceptance of responsibility.  <u>See</u> <u>United States v. Hopper</u>, 27 F.3d 378, 383-84 (9th Cir. 1994) ("[E]xtraordinary case" shown where initial obstructive conduct was not inconsistent with his subsequent acceptance of

B.  Application of the Federal Guidelines post-Booker

The Court should impose a sentence at the middle the Guidelines range. "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." United States v. Booker, 125 S. Ct. 738, 767 (2005) (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. A sentence within the Guideline range is reasonable in this case because it would help further the goals articulated in 18 U.S.C. Section 3553(a) such as "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

C.  Basis for Government's Sentencing Recommendation

Pursuant to 18 United States Code, Section 3553(a), the Court should impose a sentence in the middle of defendant's guideline range. This middle range sentence is appropriate for a number of reasons. First, although defendant's criminal history prior to his arrest in the instant case was not significant, his crime represented a very serious threat of danger to the community. At the time of his arrest in the 2500 block of Pennsylvania Avenue, S.E., he was selling drugs out of his Jeep and armed with a loaded handgun. After his arrest, he was given release pending trial and then

---

responsibility).

absconded. Nearly a year later he was arrested again in the very same block with a distribution-related amount of crack in his possession. Defendant's case aptly illustrates the perceived "revolving door" for drug and gun defendants in this city about which so many of our fellow citizens complain. The Guidelines thus capture the seriousness of defendant's offense, his dangerousness to the community and his disregard for the Court in running from justice for nearly a year. Finally, in this case -- a case in which the defendant is responsible for possessing with intent to distribute 30.5 grams of crack cocaine – a Guidelines sentence is necessary to promote respect for the law, provide just punishment for the offense and adequately deter the defendant's criminal conduct, and there are no factors that warrant the defendant being treated differently from other similarly situated defendants.

## IV.    CONCLUSION

Wherefore, the government respectfully requests that the Court sentence the defendant at the middle of the Guidelines range.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar 498-610

  /s/ David P. Saybolt
David P. Saybolt
Assistant United States Attorney
Federal Major Crimes Section
Virginia Bar #44518
555 4th Street, N.W.
Washington, DC 20530
(202) 307-6080
Fax: 353-9414
David.Saybolt@usdoj.gov